May it please the Court, Davina Chen for Matthew Hilliard. Mr. Hilliard raised a search issue as well as a number of supervised release conditions in his brief. I'd like to focus on the search issue as well as the ABLE testing condition. When someone writes you a letter and sends it in international letter class mail, customs can't look at it unless they have reasonable cause to believe that there's something in that other than a letter and that that something is contraband. Isn't that via the regulations though? Yes, that is a regulation. The regulations don't even allow them to read the correspondence unless they have a warrant. When somebody makes a phone call to you from abroad or sends you an e-mail, the government can't listen into that phone call or monitor that e-mail unless they are conducting a foreign intelligence probe. But if that letter, the e-mail, or data related to that phone call is on a laptop computer, that laptop computer is brought over the border, customs can look at it with no suspicion at all. That is unreasonable. Would it be equally unreasonable if a van came which was locked on the gates and they had a huge number of filing cabinets which were equally locked inside the van? Would it be unreasonable for them to make that search? I would say that it would be unreasonable to make that search. I do think that the facts are distinguishable. I would think that if you have all these documents, unless you have some reason to believe that those documents contain some kind of contraband, that that would be unreasonable. Do you? Do you think so? The courts have said sometimes that property you don't even, just by the very nature of property coming you can look at it, that's property. Most of those cases involve vehicle searches and specifically thing, not documents in vehicles. So if there's some documents in the glove compartment, clearly they can search for them. But what you're arguing is when it gets bigger, then it's bad. And they can't, they have to do something else? Not so much. What I'm arguing is not so much that when it gets bigger it's bad, but when it's specifically a search for documents. So if you're looking through the glove compartment, you're looking for a lot of different types of things. You're not specifically looking for expressive content. Bigger is worse, kind of goes to the role that a computer plays in our lives today. One, this court has held en banc, and I believe it was gored, or I should say noted en banc, that computers have long memories. So it's not just a matter of, oh, well, computers contain a lot of things. It's that computers contain a lot of things that you may not have intended to have on there, that you may have attempted to delete from there. Computers, they not only record what we're thinking, writing, reading, they record what we've ever thought of, ever written about, or ever read. So that's one way. If we write it, and not what we're thinking of, only if we put it on the computer. But the same thing is true of my confidential diary. And the difficulty I'm getting is the distinction. Computer world is just a wonderful world. But at bottom we're talking about documents that are inside a storage container, computer, of whether or not they can search that. And I'm having difficulty seeing the difference between that and a pickup truck coming across the border with a locked file cabinet that a person keeps all their personal data in. First of all, I wouldn't concede that the customs can read your personal diary. They said in this case that they could read personal diaries, but they made it clear that this isn't the case of when we're looking for terrorist communications and that there are 69 countries that are considered terrorist countries. And if a terrorist, someone comes in from a terrorist country and we think they're a terrorist, we can look at their diary. But again, I think it's different. I think the diary is different from the file cabinet, which is different from the computer. One of the ways it's different is the way I've described, that the computer has a long memory. Another way that the computer is different is that computers are necessary to a lot of people's lives. It's been said that if someone chooses to carry their diary over the border or these types of things over the border, then they're consenting to it being searched. But it's not so much a choice. When business people, other types of international travelers, carry their laptop computers, it's not so much a choice. As this Court has recognized in Gord, in Ajani, in Hill, computers are essential to people's lives. They use them to pay their bills. They keep track of what, where they need to go and who they need to see. They keep track of all their contact information in their computer. So although I wouldn't concede, actually, that customs can read your diary, I would say that if you choose to carry your diary, that's very different from choosing to carry your laptop computer. I take it that if we publish a decision along the lines that you indicate, we'd be in conflict with the Fourth Circuit, the Ickes case. That's correct. Do you disagree with the reasoning of Judge Wilkinson in the Ickes case? What's interesting about the Ickes case is that in that case, there was clearly reasonable suspicion to search. In fact, there was probable cause. That individual, they had already found child pornography on that individual. In addition, they learned that there was an outstanding warrant for the person's arrest. So they already had probable cause to search Mr. Ickes, either probable cause because of child porn that he had on him or a search incident to his arrest. So the defendant in Ickes made the argument that a warrant was required. And much of the discussion in Ickes responds to the defendant's position that a warrant is required. They say things like, well, no, we should leave this to the experience of customs officers, et cetera. That's in response to the argument that the customs officers should have sworn out an affidavit and got no warrant. But I do agree. Ickes does say that suspicionless searches are okay. And so we would be in — this Court would be in conflict with the Fourth Circuit. But the Fourth Circuit dismisses the First Amendment argument almost out of hand by saying that we don't believe that the Supreme Court does impose heightened standard where searches involve First Amendment interests. And they cite P.J. Video for that. But P.J. Video specifically says there are heightened standards for First Amendment searches. We're not going to impose an additional heightened standard, meaning we're not going to say that when you are trying to make out probable cause for a warrant, that you have to have an even heightened standard of probable cause. We're going to leave it at the regular probable cause. But P.J. Video says we don't need a higher standard because there's all these other special protections that the First Amendment already opposes in the Fourth Amendment context. So I think that this case is very distinguishable from Ickes. So we wouldn't — we would be in conflict with its holding. But in that case, what it was addressing was a very different argument. And in that case, the Fourth Circuit dismissed out of hand the First Amendment argument. And I think that the First Amendment argument is very strong. The reason that I started with letters, phone calls, e-mails, is not because I think that those regulations, and the Court is right, those are regulations. They're not constitutional standards. It's not that I believe that those regulations impose a constitutional standard. It's that I believe those regulations are in place because there is a legitimate and heightened expectation of privacy in expressive materials. So I'm having trouble understanding how a rule would be enunciated along the lines you suggest. I mean, I don't see a rule that says wherever the sorts of written materials you have are very essential to you or wherever the sorts of written materials you have go back a long way in your personal history, that therefore it's unreasonable to search them. So how would you articulate a standard that's not specific to a piece of technology, a laptop computer which may change in, you know, a couple of years based on the rate of development we've seen? How would you articulate a standard that would make sense? The way I would articulate the standard is that where the search is specifically for expressive materials. So that is why it's different from searching a glove box for whatever might be in the glove box. So are you saying that the Supreme Court's general rule that searches at the border are reasonable simply by virtue of the fact that they occur at the border would have an exception for any expressive materials? Is that the line you're suggesting? I wouldn't go so far, but I would note that that language comes from Ramsey, the language that searches are reasonable by virtue of the fact that they occur at the border. The first case was Ramsey. A lot of cases have cited Ramsey. But Ramsey was a case involving mail. And Ramsey specifically declined to reach the issue whether there would be a First Amendment exception. And the reason why the Supreme Court in Ramsey specifically declined to reach the issue is they noted that there was already a regulation in place that specifically precluded customs officers from, A, opening any kind of international letter class mail that did not appear to contain other types of documents, and reading anything that they found. In fact, in Ramsey, the Supreme Court was reversing the D.C. Circuit. And the D.C. Circuit had held that that search was unconstitutional under First Amendment grounds. They said that a suspicion of searches of the mail chills free speech, and therefore this search is unconstitutional, despite the fact that it occurred at the border. The Supreme Court said we are not going to agree. But they specifically said we are not going to agree because there is a regulation in place that requires reasonable cause before these searches can be held. And in that case, there was reasonable cause. The packages were coming from, I think it was Thailand, and they were bulky. And so the postal, I don't know if it was a postal or a customs official that searched the package, had reasonable cause to believe that they contained drugs, and they did. So I guess what I'm saying is that I'm not asking this Court to carve out an exception. I am saying that the Supreme Court already has declined to reach this issue. It itself did not carve out an exception, but it did not say it would not carve out an exception. It specifically declined to reach this issue. What do we do with the footnote 1 in Rome that cites Ickes dealing with a laptop computer? Rome, if the Ninth Circuit had wanted in Rome to decide the issue, I suppose it could have, but it specifically chose not to decide the issue. Well, that's because it wasn't properly before them. And it's properly before this Court. But in footnote 1, the discussion is pretty strong. What do we do? Just treat that as dicta and openly reject it? I think that, A, you note that Ickes is distinguishable. And, B, it is clearly dicta. It's not one of those cases where we have to say it looks like dicta. The Court specifically says we decline to reach the issue, and that makes it dicta. That's true. But we do have a statement by a panel saying that it's always deemed routine and then citing with approval the Ickes case. I suppose to clear this up, if we accept your position, we would have to reject that dicta. Yes. As dicta. Yes. And take a different position. That would be your position. I don't know what happened in the district court in Rome, but what I know is that the court found that the issue had been waived. And so it clearly hadn't been developed. I don't know how well it was developed in the briefs. So the court was not – did not have the benefit of briefing from both parties in that case. But, yes, to answer your question correctly, yes. The person raised it in their reply brief, and we have a rule saying you can't raise issues then. Absolutely. So that's why it wasn't before us for a holding. Well, okay. You see the problem, and you give me some advice on what we should do if we agree with you. Where I was going with the discussion of the regulations is I do believe that the fact that the government has limited itself in the international mail context and limited itself in the electronic surveillance context. Now, when I say limited itself, the government came out very clearly when it came out that the NSA was surveilling international phone calls and email and said, but we have limited ourselves to cases where we have reasonable cause to believe that one party to those communications is a terrorist. What I think that that means when the government chooses to limit itself is that it acknowledges that there's a profound discomfort with the idea that the government can do this, that they can read our mail, that they can listen to our phone calls, that they can look at our email, and all those things, our letters, our email, our phone calls if we're using internet phone, our calendars, our diaries, our work product, our trade secrets are carried around on computers. Can you also address, finish up your statement there, but could you also address why the ABLE testing is more like the penal plasmography in Weber than it is like a polygraph test that we've upheld? Absolutely. As far as the ABLE testing is concerned, the record in our case is very thin as to ABLE testing. So it would be difficult for this Court to decide whether it's more like penal plasmograph or whether it's more like polygraph. And that is the initial argument, is that under any standard, the ABLE testing in this case has to go back, because nobody justified it. The probation office didn't justify it. The court didn't justify it. And the government basically said we should leave it up to the probation office. Now, what level of justification is necessary? We've said that we don't need a specific justification for the 3583D, conditions of supervised release. I think that the Weber standard is required. And the reason I think that the Weber standard is required is that it is ABLE testing, from what we can gather from the literature, is exceptionally mentally intrusive. It may not be as physically intrusive as the penal plasmograph, but it is mentally intrusive. It asks an individual to basically stimulate themselves by looking at a photograph. It also should fall under the Weber standard because there's no data regarding the reliability or accuracy of ABLE testing, which is another factor that the Weber Court considered with regard to plasmograph. In fact, as the cases cited in our briefs show, most courts that have ever had to ask the question have found it to be not reliable and not accurate, and partly because Dr. ABLE refuses to submit his method to peer review because it's proprietary. He doesn't want to tell people what he's doing because he makes money on it. Are you suggesting that there's some sort of a Daubert standard that we're supposed to impose? No, I'm not. But I'm saying that under Weber, that was one of the factors that the Court considered in determining that the penal plasmograph was subject to a higher standard. Precisely. But then Weber went right around and said that the ABLE testing isn't of this same type. We've only done this in three areas, and they're pretty tough areas. One, you just point out, and then chemical castration and the psychiatric drugs. Those are the only places that we put restrictions. Why would ABLE fit into one of those three categories for us to hold that they must have that advanced findings before we'd allow them to be used? I think because many of the factors that existed with the penal plasmagraph exist here, and that is its intrusive nature, the lack of reliability, and the existence of less intrusive alternatives. But I would like to tell the Court that it need not decide that issue in this particular case. Perhaps in the next case, I'm not sure. But because in this case, the justification didn't even meet the Reardon standard. In Weber, the Court explained that it's not that you don't need to give any justification at all if it's not the heightened Weber standard. There needs to be some justification. In Reardon, the justification was in the probation officer's report, which specifically was specified in detail the relationship between the condition and the 3583 factors. In this case, there was no explanation. Because the Court kept the PSR, the recommendation, confidential, nobody knows what the probation officer said. The judge issued a notice of his intent to impose the condition, but it didn't have any explanation. So when the issue came up in court, the government said, Well, it's related because this is a sex case, a child sex case, and this is a child sex treatment, and we should leave it up to the treatment provider. But clearly, Weber explains that that is not enough, not under the heightened Weber standard, but under the Reardon standard. Simply saying this is a child sex case and so this condition is warranted is not enough. Didn't the defense get the notice that the Court was contemplating this before the sentencing hearing? Yes. They did. And that's why they were able to object to it before the sentence was imposed. So I'm not saying that the notice was insufficient. What I'm saying is that the explanation was insufficient. And I think that this Court ---- Was that the purpose of your objection? You need more? You need an explanation? The purpose of the objection was ---- The objection was made ---- he sent out this preliminary, which I thought was a great idea to help the defense know what's happening, and then you object to this. What was the objection, the nature of it? Was it that you have to give reasons? The objection is that it's not appropriate. That it's not appropriate. So it wasn't on the basis that there weren't reasons given. It was on the basis that able testing is not appropriate. Well, the government bears the burden of proving that it's appropriate, and the government didn't bear the burden of proving it. Okay. So the objection was not on the basis of failure to give reasons. It was on the basis that the government had failed to show it was appropriate. Right. There was no way to know that the Court wasn't going to give reasons until the Court imposed it without giving reasons. So the objection was we object to the appropriateness of the condition. Yes. When I was a district court judge, I wanted to know what your problem was so I could try and take care of it. And so when you state objection because of the failure of the government to provide appropriateness, I understand that. But if you say failure of me to give reasons, I would understand that. And I take it your objection had to do with the former rather than the latter. Yes. And does that save you here on appeal where now you argue reasons should have been given? Or do we discuss that for plain error? I believe that it saves it on appeal because, as in any other case where, for instance, if you go into court and you say, I should get probation, and the judge says, well, I'm going to give you five years, that's seen to preserve the objection to the five years. You don't need to say, well, Your Honor, I'm objecting to your giving me five years because you haven't given me any reason. What you've said is I think probation is the appropriate sentence. Then it goes up on appeal when it's not plain error. I think similarly what happened here is that the defendant – and can I also note that – and I'll get back to this. The government in its papers said that the conditions that would be appropriate in this case are the conditions that are in the plea agreement. And those conditions are tailored to this case. The able testing was not in the plea agreement. The defendant specifically reserved the right to object to able testing, and the government took it out of its plea agreement. And when the government submitted its position on sentencing, it said the conditions that are in the plea agreement are the appropriate ones that are narrowly tailored. So, of course, the government didn't meet its burden. It didn't even try to meet its burden. But back to your question. I think that clearly when someone says I've reserved my right to object to it, I've reserved my right to appeal it, and I'm telling you right now it's not appropriate, that preserves the objection. And I see that my time is up. Thank you. May it please the Court, Patricia Donahue, on behalf of the United States, I will address the border search issue and the able testing issues, unless the Court has questions about the other supervised release conditions that are challenged. The government would submit on the briefs as to those. First, regarding the border search issue, the defendant brought child pornography on his laptop computer on a flight from the Philippines to Los Angeles. The customs officials at LAX found the child pornography in a border search on that laptop. The government respectfully submits that the district court properly refused to suppress the child pornography that the defendant chose to bring into the United States on his laptop for two reasons. First and most significantly, the search was at the border. As the Supreme Court has said, searches made at the border are reasonable simply by virtue of the fact that they are at the border. And counsel's attempt to draw a distinction based on computers or based on expressive material flies in the face of 100 years of precedent on border search authority and is we would submit simply wrong. And secondly, this case, like the Ickes case, or in this case, as in Ickes, Your Honor, in any event, reasonable suspicion did support this search. Are you familiar with United States v. Arnold? Yes, Your Honor. The Arnold case, in the Arnold case, this precise issue is raised. Yes. The government lost the case before Judge Dean Pergerson came up on appeal. That has not come down from our circuit yet. Would, so far as you know, Arnold, would that cover this question that's now before us? So far as I know, Arnold, Your Honor, in this case, it would cover it with the exception of one issue. It is my understanding that in Arnold, the defense did not raise, or at least did not raise to the extent raised by the defense here, the First Amendment issue. In this case, the government submits the defense is seeking to carve out, essentially, a First Amendment exception to the border search doctrine. That argument, at a minimum, is certainly far more fleshed out by the defense in this case than it was in the Arnold case. Other than that, the arguments raised by defense, the Fourth Amendment arguments raised by defense counsel in this case are the same arguments as in Arnold. I haven't talked to my colleagues yet, but I suspect what we will do is wait for Arnold because it's first and has precedence, and then make a determination of whether we have to say anything else. But the government lost in the trial court on that, so that issue is specifically before our court now. And I imagine that it will have to be decided. I wish we got first crack at it, but we have to be patient and wait for the other Arnold case. Okay, thank you. But as far as you know, this would take care of all of the issues raised on the search with the possible exception of First Amendment issue may not be raised in Arnold. That's correct, Your Honor. Okay. That's very helpful. Thank you. That's correct. And if the court would like, I Would you like to argue the First Amendment issue then? If the court would like, I would be more than happy to address the First Amendment issue. The argument from the defense, essentially, is that there should be some sort of exception either for laptop computers and or for expressive material to the border search doctrine. And that is both legally not required and, as a practical matter, unworkable. First, legally. In PJ video, the Supreme Court essentially addressed the issue whether there should be some sort of heightened First Amendment standard in a warrant situation. The Fourth Amendment requires probable cause. However, if the search is going to be for material protected by the First Amendment, should there be some standard higher than probable cause required of the government in order to obtain a search warrant? And the Supreme Court said no. The same Fourth Amendment standard that applies across the board in every other case applies when the search is for a material arguably protected by the First Amendment. The government would respectfully submit that if the Supreme Court is not going to hold a heightened standard when the government is going into someone's home and searching for material, the court is certainly not going to go out of its way to carve out some sort of First Amendment exception in the border search area where the Supreme Court has long recognized that individuals have an extremely reduced expectation of privacy, far below anything in the home or any other property in the interior of the country. And secondly, this Court in United States v. Adjani addressed computer searches. In that case, the defense was challenging a search warrant for a computer. And in finding that probable cause supported the warrant and in finding that the warrant satisfied the specificity requirement, this Court did not reach out and establish some higher standard of probable cause to apply to a computer simply because a computer contains a considerable amount of material, both material potentially covered by the scope of the warrant and material not covered by the scope of the warrant. This Court, again, as the Supreme Court in P.J. video in the First Amendment context, applied the same Fourth Amendment standard. And again, the government would respectfully submit that this Court should not reach out and attempt to carve out some higher standard for computers at the border. And that really goes to what the defense is trying to do here, which is sort of create this false dichotomy between physical belongings and computer media. In this case, there's no question that if the defendant had chosen to print out his child pornography and put it inside plastic bags and put that in his suitcase, which is what he did with some of the photographs that he brought back over the border, then there would be no issue here. It's beyond question the customs officials had the authority to open up that suitcase and go through his personal belongings. So the difference here that the defense is trying to argue is that somehow because he put it on his computer, that makes it, should subject it to a heightened standard. So those people who bring their material in in their suitcase are subject to the border search, but those people who bring it in on a laptop computer then would not be subject to a border search unless the government could articulate reasonable suspicion. And that, of course, as I said, flies in the face of precedent, but it also doesn't make sense. The border search doctrine has long allowed customs officials to look inside backpacks, briefcases, purses, places where people keep very personal items, medications, prescription medications, religious items, items that reveal potentially a lot about a person, about that person's body, about the person's mind, and there's no question that customs officials are allowed to look in someone's, go through someone's bag if they choose to bring those items in across the border. And there's no constitutional reason to draw a line and say, well, if they happen to have that in electronic format versus hard copy format, that somehow the court is going to afford it some heightened protection. It's sort of the defense argument is sort of premised on the notion that electronic items somehow are more private than physical items, which does not make sense. In addition, the defense argument seems to be somehow that the storage capacity of the computer means it should be subject to heightened protection. It stores a lot of material, as defense counsel mentioned, over a long period of time. So among other things, that would lead to kind of the absurd result that the more material a person has or the longer they've had it stored, the less constitutional authority the government has to take a look at that material as it's coming in across the border. And that, as the Supreme Court, or as the Supreme Court has said, has unacceptable adverse consequences to border security. The whole point of border security is for the government to be able to look at what's coming in without reasonable suspicion, to look for expressive material like child pornography, like movies that are uncopyrighted, to look for things that may not on their face be used for bombs, things like that. The government has a very strong interest in being able to look for all of that at the border in whatever container, in whatever format it is found, including if it is expressive material. Kennedy. How about – I think we have your argument on that. If you wouldn't mind, could you tell us a little bit about your position on the Abel test? Your Honor, first of all, Abel testing, as this Court stated in Weber, Abel testing is essentially showing somebody pictures. Pictures are put in front of the offender, and the treatment provider observes how that person responds to pictures. How long they look at the picture. Yes. So it is in no way physically intrusive and not at all comparable to the placidemograph. As this Court said in Weber in discussing the fact that there are lesser alternatives to the placidemograph, Abel testing is specifically one of the lesser intrusive alternatives that this Court noted. So essentially it's looking at pictures. And defense counsel claims somehow that is mentally intrusive. Well, the point of sex offender treatment is for the person to speak and to say what is on his or her mind so that the treatment provider is able to help that person so that they don't reoffend. So necessarily any sort of sex offender counseling, any sort of counseling is going to require someone to articulate what's on their mind. Now, whether you want to characterize that as mentally intrusive or not, the fact of the matter is that that's the way that sex offender treatment counseling or probably any other counseling works. But it is simply looking at pictures, having the person look at pictures, and then their how long they look at it and their reaction is looked at. So in the first place, it is not intrusive. Therefore, it is not subject to the heightened requirement of Weber, which means the district court is not required to set forth on the record all of the specific reasons why the district court is imposing that particular condition. You say they don't have to set forth all of the reasons they're imposing Weber or ABLE testing. Do they have to – does the district court have to submit any reasons for requiring ABLE testing after – during supervised release? Your Honor, the government would respectfully submit no. Well, it's a – in this case, just so I can explain what happened here, the district court, prior to the sentencing, did issue, as you said, a very helpful submitted order. Sentencing. Preliminary sentencing memorandum. Here are the conditions that the court – Tentative. Tentative. Here, listing forth all the supervised release conditions that the court was contemplating imposing. At the hearing, the court asked counsel for both parties whether or not counsel had received that memorandum, whether counsel wanted more time in order to file written response, because it had only come out a couple of days before the sentencing hearing. So the court asked, do the parties have any – would parties like additional time to submit responses? And defense counsel said they had received the notice from the court, did not want additional time to submit objections, would – wanted to proceed with the sentencing that day, and would state the objections on the record. Then at the hearing, defense counsel said, regarding ABLE testing, with the specter of civil commitment in the background, I am particularly concerned about any testing that's like the ABLE testing or any responses that my client would be giving in connection with any of these psychiatric or psychological testings that are conducted. That was the sole objection to the ABLE testing on the record at the sentencing, the objection apparently being that any results from the ABLE testing might subsequently be used in some sort of civil commitment proceeding down the road against the defendant. The government responded – argued on the record that ABLE testing is one method by which a treatment provider can determine whether or not someone is sexually interested in children, and if so, the gender and general age range. And the government articulated that this condition was reasonably related to defendant's offense in light of this record, which amply demonstrates the defendant's sexual interest in children. And the government said it's an appropriate condition of supervised release to allow the treatment provider to make the call at the time whether ABLE testing would be appropriate. The district court listened to both parties, and I think it's fair to infer obviously took into account what was said, including the reasons articulated by the government, and then allowed ABLE testing as one of the options for the treatment provider during supervised release down the road. So what is your position, at least as to this case, as to whether the government had to do more, that is, state its reasons why it's imposing ABLE testing? The government are – the court asking whether or not the district court needed to impose reasons? No. What's your position before us of whether or not we should remand it and make them – make the district court state reasons? The district – the government's position is there's no need for a remand. The district court does not need to state – put on the record the reasons that it imposed the ABLE testing because it is not intrusive. It's not like the anti-psychotic medication. It's not like the placid McGrath. It's not like chemical castration. And this is not a record which is bereft of any reason why this condition was imposed. The pre-sentence report as well contains ample information as to – about the defendant that justifies the imposition of the condition, and the government made that argument on the record. I don't think there's a reason to go back and say, no, district court, you have to go through and explain precisely why it is that you imposed this condition in light of the fact that it's not the restriction or the intrusion into the physical body that the other conditions are. I take it what you're saying is that the defendant was well-informed that he was going to have to go through and explain why he imposed ABLE testing, gave him every opportunity to respond, and then there was an objection as to reasonableness of implementation. Then, okay, then it looks like that maybe the objection itself isn't you have to state reasons, but is it reasonable? And then the government makes its argument. Then what does the district judge say about ABLE testing? The district – after the government made its argument, the district judge imposed ABLE testing. The district judge did not say, I am imposing ABLE testing for the following reasons. The court did not specifically articulate – and defense counsel's argument, obviously, is that the court – the court is required to say, here's why I'm opposing – the court is imposing ABLE testing. The government would respectfully this event that on – particularly on this record, that's not required. But they're saying that under 3583, you have to say 3583 reasons. Your response is that you don't need to based on this record? Well, the court set forth in – at the beginning of the sentencing when it opposed the period of incarceration, it set forth the 3583 reasons that it was imposing this sentence. But our position is that the government – the court is not required to go through each condition of supervised release and set forth 3583 conditions as to each of those conditions. I see. So you're taking the position that the imposition of supervised release is a part of the sentence, and the description at the top was sufficient unless something comes up in these specific discussions with counsel? Yes. Or unless it's like a placid McGrath or chemical castration or a condition that clearly requires specific findings on the part of the district court. I understand your argument. Thank you. Thank you. Okay. This case is submitted.
judges: Wallace, Gould, Ikuta